ALLISON W. LAIRD and Another v. W. K. F. VILA and Others.[1]

July 22, 1904.

Nos. 13,824—(84).

**Contract to Make Will.**

A party may legally obligate himself to devise and bequeath real and personal property to minor relatives in consideration that the beneficiaries shall assume a peculiar and domestic relation to the promisor. and render him services of a character to make it impossible to estimate

[1] Reported in 100 N. W. 656.

their value by any pecuniary standard. Following Svanburg v. Fosseen, 75 Minn. 350; Stellmacher v. Bruder, 89 Minn. 507; Newton v. Newton, 46 Minn. 33.

**Specific Performance.**

When such relation is established, and an agreement executed on behalf of the promisee and beneficiaries, a specific performance of the contract will be decreed.

**Executed Contract between Husband and Wife.**

While contracts involving real property are void, under section 5534, G. S. 1894, still in case of an executed contract entered into between husband and wife, pursuant to which the wife induced the husband to convey to her by will all his real and personal property upon the express condition that she, in turn, would devise and bequeath the same to designated relatives, upon default on her part she takes such property ex maleficio in trust for the parties beneficially interested.

**Jurisdiction.**

Under the circumstances outlined, the probate court is without, and the district court has, jurisdiction of an action for the specific performance of such contracts.

**Evidence.**

Evidence to sustain such agreements must be clear, positive, and conclusive.

Appeal by defendants from an order of the district court for Winona county, Snow, J., overruling a demurrer to the complaint. Affirmed.

*Fitzpatrick & Buck* and *Henry M. Lamberton,* for appellants.

*Brown, Abbott & Somsen,* for respondents.

DOUGLAS, J.

This is an action in equity brought in the district court of Winona county for specific performance of certain executed oral contracts. The defendants appeal from an order overruling their demurrer to plaintiffs' complaint.

It appears from the complaint that in 1878 and 1881, respectively, Isaac B. Cummings and Caroline F. Cummings, his wife, who were without issue, admitted their nieces Ella M. Yeaton and Annie O. Yeaton (now Annie O. Miller), minors, into their home, at Winona, and that said minors ever thereafter, until the death of the former, continued to reside therein as members of the family; that in 1885 William H. and Frederick I. Cummings, minor sons of Charles H.

Cummings, and nephews of Isaac B. Cummings, were about to be removed by their father from Winona to the city of Chicago. For years they had resided with their grandmother, adjacent to the home of said Isaac B. and Caroline Cummings, and a strong attachment had sprung up between them and the latter. At that time Isaac B. and Caroline F. Cummings entered into a mutual agreement with Charles F. to adopt said minors and support and educate them during their minority, and by their respective wills devise and bequeath to said boys and said Ella M. and Annie O. Yeaton all of the property of which the said Isaac and Caroline F. Cummings should die seised or possessed, in the following proportions: Three-tenths to each boy and two-tenths to each girl—conditioned, in case of death of any of said children before the demise of said Isaac B. and Caroline F. Cummings, that the share of the one so dying should go to the remaining children in the proportion aforesaid.

It also appears: That said Annie O. Yeaton had for many years lived with her uncle Charles H. Cummings as a member of his family, and that said Charles H., in consideration thereof, agreed perpetually to surrender to said Isaac B. and Caroline F. Cummings her care, custody, control, companionship, and service, as well as the care, companionship, control, and service of his minor sons, and consent to their adoption. Also that said Annie O. Yeaton assented thereto, and ever thereafter, with her sister, lived with Isaac B. and Caroline F. Cummings as members of their family, and each continuously rendered such service as is customary with children of natural parents. Thereupon, pursuant to an order of the district court of Winona county, and with their assent, and the consent and approval of their father, William H. and Frederick I. Cummings were duly adopted by said Isaac B. and Caroline F. Cummings. That said minors ever thereafter, until the death of said Isaac B. and Caroline F. Cummings, sustained the relation to them of natural children, and continuously obeyed and served them as directed.

It appears that in 1886 Isaac B. Cummings by will devised and bequeathed his entire estate, both real and personal, to his wife, for her use and benefit during her natural life, and the residue of said estate, after her death, to said four minor children, in the proportions heretofore stated, but thereafter revoked said will upon the request of his

said wife, and executed another, by which he bequeathed to her all his property, both real and personal. It is alleged that the former will was revoked, and the latter executed, in consideration of a mutual agreement entered into between them, by which said Caroline F. Cummings agreed that she would thereafter will all her property, both real and personal, to the said four minor children, in the proportions mentioned. Said Caroline F. Cummings—now deceased—upon the death of her husband accepted all the property of which he died seised or possessed, but failed to keep said agreement, and died intestate. By mesne conveyances the plaintiffs have become the owners of the respective shares of said beneficiaries in the property involved, other than that which they otherwise would be entitled to, had said Caroline F. Cummings devised and bequeathed said property in accordance with the alleged agreement made between herself, Isaac B., and Charles H. Cummings in 1885, and the said agreement made between herself and said Isaac B. Cummings. This action is brought for the purpose of securing a decree for the specific performance of each of said agreements, and involves the legal title to the real and personal property of which Caroline F. Cummings died seised or possessed, subject to the demands and necessities of administration in proceedings now pending in the probate court of said county. The defendants are the heirs at law of said Caroline F. Cummings.

Three objections are presented by the demurrer to each cause of action: (1) That the trial court is without jurisdiction of this action; (2) that another action is pending between the parties for the same cause; (3) that the complaint does not state a cause of action.

In holding that the first and second objections are not well taken, we need only refer to the repeated adjudications of this court in which the questions presented were decided and set at rest. In Mousseau v. Mousseau, 40 Minn. 236, 41 N. W. 977, it was held that, while the probate court had jurisdiction to direct an executor to enter into a conveyance of real estate which his testator had bound himself in writing to make during his lifetime, still the court was without jurisdiction to decide against a party applying for such a conveyance. In other words, the court held it was without full jurisdiction in the premises. On the other hand, it was expressly held in Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, and reaffirmed in Stellmacher v. Bruder, 89 Minn. 507,

95 N. W. 324, that the probate court is without, and the district court has, jurisdiction over actions for the specific performance of parol contracts for the conveyance of real and personal property.

We therefore have only to inquire as to the sufficiency of two alleged causes of action set forth in respondents' complaint. The first is based upon an agreement made between Isaac B. and Caroline F. Cummings, his wife, on the one side, and his brother Charles H. Cummings, on the other, in which the former agreed to will all property, both real and personal, of which the survivor should die seised or possessed, to the respective children and nieces of said Charles H., upon the consideration received and above referred to. In our opinion, the precise question presented has been repeatedly decided in this court, and must now be reaffirmed. In Newton v. Newton, 46 Minn. 33, 48 N. W. 450, it was held, under special conditions there existing, that it was within the power of a party legally to obligate himself to make a will bequeathing certain personal property to one of his grandchildren.

In Svanburg v. Fosseen, supra, the court directed the specific performance of an executed contract in and by which the deceased agreed to devise and bequeath certain real and personal property. A number of opinions were written by different members of the court, but its conclusion was placed largely upon the ground that the services rendered in the performance of the agreement were of such a peculiar nature that it was impossible to estimate the value thereof by any pecuniary standard; that the personal relation of the parties necessarily entered into the transaction, if it be treated as valid; and that neither party thereto intended to measure such services by a pecuniary standard. In that case plaintiff and her sisters were orphans, aged eight, ten, and thirteen years, respectively; and an oral contract entered into between their uncle, with their assent, and James and Anna Mary Fosseen, in and by which the latter agreed to devise and bequeath their property, both real and personal, to said minors, provided the latter would live with them and give them their services as directed during their minority. Said minors entered the family of the deceased, and continued during their minority to live with and bear to them the relation of children to their parents until the death of said James and Anna Fosseen.

This doctrine was again reaffirmed in Stellmacher v. Bruder, supra. In that case, in denying the application for specific performance, the

93 M.—4

court pointed out the distinction between the issue presented and that before the court in the Fosseen case, to wit, that the element of a personal and domestic relation was wanting in the contract. The court uses the following language: "A party may obligate himself to make his will in a particular way, or to give specific property to a particular person, so as to bind his estate. But the courts will be strict in looking into the circumstances of such agreements, and require full and satisfactory proof of the fairness and justness of the transaction. Newton v. Newton, 46 Minn. 33 [48 N. W. 450]; Svanburg v. Fosseen, 75 Minn. 350 [78 N. W. 4]. The remedy for the breach of such a contract depends upon the facts of each particular case. If the contract be an oral one to devise land, and is reasonably certain as to its subject-matter and its stipulations, equity will decree specific performance, if there has been a part performance of such a character as will take a parol agreement to convey land out of the statute of frauds, upon principles which courts of equity recognize and act upon. If the consideration for the contract be labor and services which may be estimated, and their value liquidated in money, so as reasonably to make the promisee whole, specific performance will not be decreed. But where the consideration of the contract is that the promisee shall assume a peculiar and domestic relation to the promisor, and render to him services of such a peculiar character that it is practically impossible to estimate their value by any pecuniary standard, specific performance will be decreed. Svanburg v. Fosseen, supra; Johnson v. Hubbell, 10 N. J. Eq. 332, 66 Am. Dec. 773, notes."

In the case at bar, Charles H. Cummings surrendered the care, custody, and companionship of his children to the deceased. They were immediately adopted by the latter, and ever thereafter sustained to them, by mutual agreement, the peculiar relation of children toward their natural parents. Pursuant to the same agreement, the nieces of Charles H. Cummings continued to live in the family of said Isaac and Caroline F. Cummings, and not only rendered to the latter continuous personal service, but also sustained the relation of children to them, in all particulars. It appears from the allegations of the complaint that a strong and lasting friendship grew up between said children and the deceased, and that Isaac B. executed his last will and testament in accordance with the terms of said agreement, and later, upon exe-

cuting an additional will in favor of his wife, exacted of her an agreement by which she undertook and agreed to execute a will during her lifetime granting to said minors the estate, both real and personal, of which she died seised or possessed. Tested by the rule adopted in the cases cited, we are of the opinion that the agreement entered into between Caroline F. and Charles H. Cummings, which it appears from the allegations of the complaint was fully executed, was valid, and is binding upon her estate, and that plaintiffs, upon the facts alleged, are entitled to the relief prayed for. We again reaffirm all that was said in the cases cited, to the effect that the proof to sustain such an agreement must in all particulars be clear, positive, and convincing. The necessity of requiring a strict degree of proof to establish an issue of this character is too patent to warrant extended elaboration.

The second cause of action is based, as we have seen, upon the allegation that Caroline F. Cummings induced her husband to modify a will then executed in favor of others, and devise and bequeath, by will subsequently executed, all his estate, both real and personal to her, and, in consideration thereof, agreed to execute a last will and testament in the terms hereinbefore set forth. It is urged that this agreement by the wife is void, under the terms of section 5534, G. S. 1894, which in part provides that "no contract between a husband and wife the one with the other, relative to the real estate of either or any interest therein shall be valid." Also that there is no exception to this section of the statute, as there is to the statute of frauds, in regard to partial performance, such as is provided in section 4212, G. S. 1894. In our opinion, however, the validity of such an agreement is not before the court. If it was, the statutory prohibition referred to would only apply to the real estate owned by the wife. As applied to real estate, the agreement between them may be treated as illegal, inasmuch as it clearly falls within the statutory prohibition; but its illegality was not asserted by either of the parties thereto, and, having been executed by Isaac B. Cummings, and his wife having received the entire benefit thereof, by and through the will executed by her husband in pursuance of such agreement, in our judgment she took the property ex maleficio, and her heirs are estopped from disputing the validity of the agreement. Ahrens v. Jones, 169 N. Y. 555, 62 N. E. 666; Carmichael v. Carmichael, 72 Mich. 76, 40 N. W. 173; Duvale v. Duvale, 54 N. J.

Eq. 581, 35 Atl. 750; Johnson v. Hubbell, 10 N. J. Eq. 332; Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788.

The issue is distinguishable from that involved in Luse v. Reed, 63 Minn. 5, 65 N. W. 91. In that case the husband caused the title of real estate to be placed in his wife's name. A verbal declaration of trust made by the wife to her husband at the time of the above conveyances was held to be void, as within the statute of frauds and the statute of uses and trusts, and a written declaration of trust subsequently entered into by her, declaring that she held such property in trust for him, was held void, under section 5534, G. S. 1894. The court found the conveyances to her were largely for the benefit of her husband, and it was suggested that, had the transfers been for her use and benefit, a trust ex maleficio might have resulted. In the case at bar the transfer to her by will was solely in her interest and for her benefit.

It follows that the administrator of the estate of said deceased holds the property thereof, not necessary for the purpose of paying the expenses of administration, as trustee for the plaintiffs, and the latter are entitled to judgment decreeing the specific performance of the agreements referred to.

The order of the trial judge overruling the demurrer is therefore affirmed.